The United States Court of Appeals for the Ninth Circuit is now in session. Good morning to all assembled. I'm Judge Gould and I'm delighted to be sitting with my colleagues Judge Bennett and Judge Nelson. And on behalf of the panel, we want to thank all of the during a pandemic. We appreciate that. If as sort of a pandemic bonus, the best I can do, if any advocate needs an extra minute or two and you ask me for that, you will get it. Without further discussion, I think we can proceed to the first case on our argument docket. Which is B&G Foods North America, Appellant v. Kim Embry, et al, appellees. And the case is set for 15 minutes per side. So if the Hagee, Judge Gould, thank you very much. If the appellate lawyer, Mr. Hagee, wants to make a rebuttal argument, it would be best if he could stop before all those times, used up and reserve some time. However, as I said, if you need a little more time, I've already tipped my hand that I'll grant it. So without... Without further discussion, we can start with the argument. Thank you, Your Honor. And I would like to reserve three minutes and I see the clock and I appreciate Your Honor's courtesy in pointing that out. The district court's decision below is the first in this or any court to immunize a state actor under the Noor-Pennington Doctrine, who unquestionably violated a citizen's, private citizen's, or a corporation's, or a business's constitutional rights. Our First Amendment unequivocally protects persons from, quote, any law abridging the freedom of speech, unquote. And in particular, from state actors who would seek to compel those citizens or businesses to say things they do not want to say, much less to compel such a business, as in this case, to say things that the state itself knows is false. This court and the U.S. Supreme Court repeatedly have affirmed the rights of individuals and businesses to be free from such constitutional invasion. Whether we're talking about free speech rights, the free exercise of religion, voting rights, the Second Amendment, racial discrimination, property seizures, and the list goes on. This is especially true, whereas here, the district court made related findings that the state action it issued, the very state action under Prop 65 that is alleged at B&G Foods' complaint, is unconstitutional. And in fact, is so unconstitutional that the court granted a preliminary injunction against state actors, including private enforcers, from continuing to engage in that conduct. The state action at issue here seeks to compel speech that would require my client, a food company, to falsely tell the public that its, I dare say, delicious cookie cake products contain a chemical known to cause cancer in humans. Again, when the state knows itself and has admitted under oath, and the vast majority of reputable scientific literature strongly suggests otherwise. And the court itself, again, in the companion Cal Chambers case, on preliminary injunction, made specific and detailed findings that that compelled speech does not pass central Hudson in strict scrutiny for compelling speech. It certainly doesn't pass Zatter or any of the other standards that this court has applied when the state attempts to step in and tell citizens. You know, counsel, you're obviously free to structure your argument how you choose to, but I'd suggest you might want to start moving right into Noor Pennington. I'd be happy to, Judge Bennett. We have four central problems that we think the court needs to focus on with how the lower court dealt with Noor Pennington. We believe the first most sort of doctrinal problem is that the court skipped over the second prong of Judge Berzon's articulation in the Sosa case from this court, which in just a table set here, the first prong is, was there some kind of petitioning activity at issue? We argue there was not, but okay, there's some form of petitioning activity. The second prong is whether that petitioning activity is actually protected. And your honor, we would submit that there is no way that a state actor seeking to enforce an unconstitutional law could ever be engaged in protected petitioning activity. The court simply skipped over that entire analysis. And we believe by her own recognition in the companion Cal Chambers case would be precluded from suggesting that unconstitutional state action could ever ensure the kind of immunity that is granted. In a companion way, the court, I think, forgets or sidesteps. Counsel, I'm just, I'm trying to track your mind. Am I misremembering? Am I mixing up my cases? So the court assumed that there were state action for the purposes of addressing the defendant's motion to dismiss, right? It assumed, but it never made that finding. And I'm concerned. I mean, it said, even if it were state action, nor Pennington still applied here, correct? We believe it cannot. And that's the problem with Do you believe that it cannot because nor Pennington can apply to the government or I thought that was one of your arguments was that we have to find state action because if it's state action, then nor Pennington cannot apply. Well, as your honor recognizes from the opening and reply brief, and I assume this is what you're referring to. We believe we do believe there is a fundamental constitutional or structural tension with the court's analysis and how it basically skipped over the entire reasoning, or at least a substantial portion of the reasoning in Mitcham v. Foster, the 1972 Supreme Court decision, which says under causes of action under section 1983, as here, that there is a direct right to hold state actors, including executive, legislative, or judicial persons accountable in federal court for constitutional deprivations. And your honor, part of the struggle here is that nor Pennington originally was cabined as something that would protect parties working in an antitrust context, or trying to be relieved of antitrust liability for getting together to lobby or petition the state. And that's very awkward because we're dealing with a situation where effectively, the state is petitioning itself. And if you just go back and go to the first principles and look at the text of the First Amendment, and you look at the petitioning clause, it doesn't say anything about the state. It just says the rights of the people. I was going to say, but on that point, isn't that point foreclosed by our prior precedent, like the Kearney v. Foley and Lardner case, which extends this doctrine to lawsuits? We don't believe so, your honor. And there's a couple reasons why. The first is, of course, that the Ninth Circuit's decisions in cases certainly can't override Mitchum and Mitchum's project. And I would just note, we looked at the appellate record in both of those cases. And the appellant that was seeking to withstand the motion to dismiss made by the defendants in those actions never raised Mitchum. It was never placed. But when was Mitchum decided? Mitchum was decided in 1972. Well, isn't that the problem, is that Kearney came out in 2009? I mean, I'm not sure we can overrule subsequent precedent based on, is there a more recent Supreme Court case from 2009 that you would argue overrules Kearney? Well, Kearney is a Ninth Circuit decision, as you know, Judge Nelson. And it simply did not address the holding in Mitchum. But I would even go further, your honor. I don't think that we have to necessarily do battle with Kearney or with Manistee, the other case that was cited by the court, for the simple reason that the court didn't do the job that Judge Berzon said needs to be done under SOSA. And that's pronged too. Is this actual protected petitioning activity? And if we're to engage in unconstitutional deprivations of a citizen's rights, it can't be protected petitioning activity. Otherwise, we have this circular argument where... Counsel, maybe the answer to my question is obvious. And if it is, I apologize. But is that argument separate from or part and parcel of your sham exception argument? It's separate and apart, your honor. Okay, so if the lawsuits aren't shams, if, for example, they are objectively reasonable, and or not brought with a subjectively improper motive, and there's a question of what you raised below and what you didn't, but putting that aside. So let's say they are objectively reasonable, because of California state law, your view is it doesn't make any difference that Norr Pennington simply doesn't apply. Because if the basis of the lawsuit is somehow unconstitutional, even if it's objectively reasonable, you don't have to get to sham exceptions. It's just outside the scope of Norr Pennington by some sort of definition. But yes, I mean, that's certainly the way this circuit has construed the Norr Pennington doctrine. And again, it makes sense because particularly when you have a state actor, there's some pernicious risk that that state actor is going to abuse the petitioning process to try to enforce any kind of unconstitutional law, again, regarding all kinds of rights. We believe that this issue spans the political spectrum. It doesn't matter what particular issue you may care about. You don't want state actors using an immunity defense when they are trying to do things that are unconstitutional. And that's pronged too. And, you know, Judge Bennett, I think that in fairness to us, I think that standard is a lower standard than the sham litigation exception, which requires, I think, a higher pleading standard of objective unreasonableness and some subjective intent to do things that are bad. Your honors, I'm sure read our briefs and the companion Amici, where we lay out not only in our complaint, but from an asundery of facts that these Prop 65 lawsuits related to acrylamide are rife with problems and with abuse, and that the particular defendants in this case are involved in precisely that conduct. So can I ask you about that? Because that's cutting more into the sham exception, isn't it? One question I have is the district court didn't allow it didn't the district court hold that it was futile, it would be futile for you to amend your complaint. But it seems to me like there's a lot of evidence that are allegations, I should say not evidence that could have been brought into the complaint that wasn't. Do you agree with that assessment that if you were allowed to amend the complaint, there's more allegations that you could have plausibly made to support the sham exception? Absolutely, Judge Nelson. I mean, we obviously stand on the complaint, we think that it details in large part all of the reasons why this litigation regarding acrylamide is a sham. And I guess to pivot back to Judge Bennett, I don't think you could ever have an objectively reasonable lawsuit by a state actor that is prima facie unconstitutional. That just like basic principles with the First Amendment and whose rights are we protecting? We're not protecting state actors. That's not what the First Amendment says. It says we're protecting the rights of the people. And if you're suggesting that we can protect petitioning rights by state actors to infringe all kinds of constitutional rights, I really do believe I'm not trying to be hyperbolic. I think we've opened a Pandora's box for all kinds of mischief that the state may play in trying to erode our civil liberties. And it's just not okay. Counsel, let's say we didn't agree with you on the applicability of Norr Pennington based on the current record. But we did agree with you that you should be given the opportunity to the issue of whether the issue the district court didn't reach as to whether the defendants acted under the color of state law. Could that be a reason to allow that to be addressed by the district court in the first instance, if we did send us back for giving you the opportunity to actually did render findings that private enforcers with respect to Prop 65 and acrylamide are acting in privity with the state. And that was the basis, one of the bases for the court's extension of the preliminary injunction to private enforcers in the Cal Chambers case. So you're already dealing with a collective record, if you will, in this lawsuit where the state question has already been resolved and would have to be addressed on an abusive discretion ground by this court. In our case, the court assumed that it was state actors because of the detailed allegations in the complaint. And again, we're on a 12B6 standard. We're on an incredibly deferential standard to the complaint. The allegations must be taken as true. And with respect to Cham litigation and with respect to Norr Pennington issues, we respectfully believe the court just didn't do that. We did not get the benefit of the doubt that this court repeatedly said that such allegations must enjoy. I note that I have 23 seconds on my shot clock left, Judge Gould. Unless there are other questions, I would like to reserve some modest time for a rebuttal if I may. Yeah. How long, please, was your initial plan to rebuttal to be? I was hoping for three minutes, Your Honor, but I will try to be as brief as possible. Okay. Well, you could, I have one question for you, myself, before you conclude, but I'll give you your three minutes rebuttal time later. My question is this, what is the difference between the disclosure on food here requested relating to cancer causing elements and the warning sign that's always appended to cigarettes these days saying that they may be hazardous or they are hazardous to health? Thank you, Your Honor. A helpful question. In terms of the analysis under Central Hudson, under Zarder, it's the same analysis. The scientific community is in complete agreement that smoking kills and that those cigarettes are indeed extraordinarily bad. So those are of unquestionable fact at this juncture, and so they pass constitutional muster. And I believe, in addition, those statements that are put on cigarette packages, many of those are subject to, I think, consent decrees and settlements that have been entered between manufacturers and the state. Here, we're talking about outright compelled speech that is false. And as the district court has held in its decision in the Cal Chambers matter, that compelled speech is misleading at best based on the authorities that have been presented to the court. Okay. Thank you, counsel. Thank you, Your Honor. We'll proceed to Mr. Markley. And for your planning purposes, Mr. Hagee, I'll give you three minutes for rebuttal time so you can plan for that. And if Mr. Markley wants an extra three minutes, he'll get that too. Thank you, Your Honor. Good morning. May it please the court. In all but the most exceptional circumstances, you cannot sue someone because they sued you. There are a variety of principles that support this conclusion. Most notably among them is the Noir-Pennington, which sounds a non-First Amendment right to petition the courts, as well as other branches of government. This was the basis for the district court's decision dismissing B&G's complaint with prejudice and this court should affirm. Alternatively, were the court to reach state action, that would be another grounds for affirming the trial court's ruling. To jump into the Noir-Pennington issues in this case. Can we go back to first principles on Noir-Pennington? I understand we're stuck with the Kearney case and we need to abide by it. But can you explain to me why Noir-Pennington should apply to government actors? It's not certainly, Your Honor. When you look at this court's decision and both Manistee and Kearney, the rationale for applying the Noir-Pennington doctrine is that in the context of what we have here in the United States and California, we have represented democracies where the people elect officials to act on their behalf. And so in this context, in Proposition 65, we have a statute that was a voter initiative that specifically said the people of the state of California want to see labels on dangerous food products that contain certain listed chemicals. But they didn't say they wanted to see an overdisclosure on those labels that may indeed be dangerous. The voters wanted open disclosure, but that comes down to whether this is truthful or not. And there does seem to be a claim here that seems to be supported in other cases have been heard that what you are requesting is not accurate. So why should they have to put that on their label? Sure, Your Honor. So let me address the accuracy of these labels for a moment. The first of all, Proposition 65 was enacted in 1986. It's been around for many years, longer than I've been alive, actually. So the fact that no one has ever found, until the lower court here in the Calchamber case, no one ever found that any labeling requirements were unconstitutional in any way. In fact, the opposite is true. When you look at the amicus brief, they point out two cases. We asked for judicial notice of these same cases in the lower court. And there's the Starbucks case, which was a 2015 bench trial. The first phase of that trial addressed the First Amendment defense that this was false speech, acrylamide and coffee was the We know there's a Frito-Lay case that also went forward in the state courts through an MSJ phase, which also failed to prove that this was false speech. So to say that this speech is, you know, unconstitutional or even found that way, that's simply not true. To the extent that the district court's decision holds in the Calchamber case saying this is false speech, that would be a first of its kind decision. And that actually came down after this lawsuit was that this court should criticize the district court's finding that Noir-Pennington applied because there was no precedent of no allegation of any finding by any court at that point in time that this speech was in any way unconstitutional or problematic. And maybe your answer is that to the extent that it and I'm not asking you to concede that these are false statements that are being requested, but I guess that would fall within the sham exception. So even under Noir-Pennington, if they were, you know, if the claims that were being requested were were indeed false, or, you know, you had no basis for the claim, Noir-Pennington would not would not preclude that lawsuit. Exactly, your honors. Yes, that's why we have the sham exception that it's not that any lawsuit of any nature whatsoever is allowed to proceed. We do, of course, as the Sosa court points out, we do need to allow breathing room here. And that's why the sham exemption is rather narrow and hard to meet. You need to show objective baselessness, among other things, which, again, I think in this context simply don't exist. Back up, you say in this context don't exist, that's because of the allegations in the current complaint? Or in your view, there's no allegations that could be made in this context that would be would make the lawsuit objectively unreasonable? I think it's both, your honor. I think the complaint concedes that these lawsuits have been highly successful. The parties continue to wait. Let's take a step back on highly successful. I'm not sure I agree with you that they've been highly successful. And to me, that might be one of the issues where an amendment might be allowed, because I mean, how many of these have gone? Have you gotten an actual verdict on any of these? I You send out a letter to, you know, hundreds of companies, and then some of them just settle for nuisance value. And so you rack up a lot of money. I don't see that as success. I don't see that as benefiting the public in any way. I don't see that as defending the people of California who voted for Prop 65. So I want to explain to me why you your position is that you've been successful? I will certainly, your honor. And again, I'll point back to the Frito-Lay case and the Starbucks case. You know, most civil cases settle short of trial. So it's partly unique that there's settlements in this context. And I'll point out to you that it's not just a matter of obtaining settlements. If you look at ER 299-3354, these are actually consent judgments that they're a matter of getting a payment and going away. These these consent judgments call for one and or two things. As an initial matter, they would call for labeling on the products going forward. No, I understand that. But that doesn't that doesn't take away from the point that these consent judgments are basically to get rid of the litigation and that the parties aren't fighting. Have you ever won a case where a party's actually fought you to to conclusion here? When you're saying me, are you talking about Ms. Embry and Ms. Slick? I'm actually asking for anyone. I mean, yeah, I'd like I'd be interested in in the party here. But is it can you point me to a case where a case has actually been fought to conclusion on this particular? I'm sorry, I'm going to get the the the is it amnet? Acrylamide? Yeah, acrylamide. Has acrylamide ever actually been litigated to conclusion to show that it that under the you know, that a jury would find that that that this kind of a warning would actually be required? Certainly, Your Honor. Again, look at page 19 and 20 or 19 through 21 of the amicus brief. We have the same thing in our request for judicial notice. In that instance, you'll see the cert versus Starbucks case that that went through a phase one bench trial on the First Amendment defense. And you'll see in there that the the coffee manufacturers, that's the food industry, same industry, to say a lot of the same lawyers involved in this case in the Cal Chamber case that they lost at trial on First Amendment grounds. And then again, also cite you to the Frito-Lay case, which is the same place in the amicus briefing where again, that case went all through a motion for summary judgment phase against a lot of manufacturers of chips and french fries, I believe it was. And so you have the whole food industry presenting their best shot at a motion for summary judgment and a trial and they've been unsuccessful on both instances. Counsel, I want to sort of go back to amending the complaint. And we're all in agreement, the district court gave no shot at amending the complaint, right? That is that is true. I think yeah, she's not counted as based on the facts. Yeah. And so some of the facts that could be added, for example, to support the sham, the sham litigation exception, defendants made no efforts to investigate their claims. Defendants generally don't prevail in court to obtain quick settlements. Defendants subjectively are not pursuing these claims because they think they're, they're meritorious and indeed file them without regard to to the merits, the products qualify for the safe harbor. I mean, these types of facts, why shouldn't we, even if we agree the district court on the record got nor Pennington correct, why shouldn't we send this back for a shot at amending the complaint and then let the district court deal with those allegations as to whether whether they help? Yeah, happy to address that, Your Honor. So as an initial matter, as the complaint reads, it basically concedes that this litigation is objectively successful. And the breathing room that we talked about in the Sosa case, that is necessary for the petitioning clause to give people some breathing room, that even a case that ultimately loses or a case that is ultimately unsuccessful, that that's why we require both objective and subjective baselessness for these plans. Is the law clear that you need both that if there is a subjective intent to bring cases without regard to the merits? Isn't there at least an argument? And I understand your forfeiture argument on the state of the record here. But isn't there at least an argument that under the case law that should suffice? I think the case law has been clear that you do need both objective and subjective baselessness. That's well, not in the labor context, at least, right? Sure, but but I will point out, both Manistee and Ernie specifically address an issue that Mr. 80 claims is the first of its kind, but it's not that in that case, you have a 1983 claim running into a Namaar-Pennington defense, but both claims squarely address that issue. That's Manistee and Ernie. And both, but both decisions by this court apply the normal sham exemption. They don't apply the kind of watered down sham light analysis in the labor context, they clearly apply the normal. Do either do either one of them hold that, that exception, the quote unquote watered down exception, as you described it is absolutely limited to the labor context. I don't know if any court has said it's absolutely limited, but the application of the Namaar-Pennington test to a 1983 claim, the same issue presented here was presented was addressed under the normal rubric of the sham exemption in both Manistee and Ernie. And so I would argue that's binding on the court here that we should not apply some sort of subjective only sort of lighter version of the test. And again, the right to petition needs the breathing room there to not just allow someone to say, well, you had a subjectively poor intent to bring this case, but you must show that it is also objectively baseless. And I think that's where... Okay. So, so, so counsel, let, let's say we were inclined to rule that, that argument on this appeal that it's, you apply the labor context rule here is forfeited, but we were also inclined to send it back for allowing an amendment. Would you agree that in those circumstances, it would be fair and reasonable to allow that argument to be remade vis-a-vis the amended complaint, so it could be finally determined first by the district court and then if necessary by us? I think our argument would be that again, that both Kearney and Manistee foreclose any sort of down or lighter application of the test. And I think it brings up another important point and that they're trying to pit this as a constitution on constitution case. And it's, it's actually not, it's a, in the 1983 as a federally created statutory remedy that you can pursue damages under if your constitutional rights are violated, but it is not itself a constitutional right. And so I think they're conflating a little bit between a statutory positive action, which is section 193, and a pure constitutional right, that they will always have their constitutional first amendment right, no matter the outcome of this case, which they will present in the lower end, I'm sorry, in the state court, where, where this really should be addressed. It's an affirmative defense. It's their 17th affirmative defense in the lower court. And so I, they're on an, on an individual case by case basis. Well, I think, well, I think this 1983 lawsuit, all it does is target one, one off state court action. It's not like they're seeking some broader declaration that processed by the legal, like the California chamber case might do that. But B and G's case is specifically targeted at a single state court proceeding. And nowhere in the record in no case has been where that type of claim has been allowed to proceed. And if I can, Your Honor, to see I have limited time left here. I'd like to address the Meacham decision, which Mr. Hagey and B and G feel warrants some sort of altered application. As I think it was Judge Nelson pointed out earlier, that decision predates both Manistee and Kearney. Also, Your Honor, for all the discussion of that case by B and G and the amicus, they omit the concluding remarks by the Supreme Court in the Meacham case. There the court specifically states that it is in no way qualifying the restraints on federal court jurisdiction based on generally applicable principles that they specifically say equity, comedy, and federalism must be considered by the lower court on remand. And I would argue here that one of those generally applicable principles is Noir-Pennington. So something's clear that Noir-Pennington is a generally applicable rule of statutory construction, just like federalism, just like comedy, just like any other ground. But counsel, even if your friend is right, that we got it wrong, there's nothing that would allow this panel to say that. That's right. I agree with that. I think Manistee forecloses any reconsideration of how Noir-Pennington is squared with 1983 and address that issue head on. And also in the Meacham case, they discuss younger abstention principles. And again, they specifically note that allowing a federal court action to take aim at an earlier filed state court proceeding is both extraordinary and exceptional. And then so again, this is not a, there was no bright line endorsement in the Meacham case of always permitting a 1983 action to go forward. That is far from the holding in that case. And so I think we still, even under the Meacham case, even if it could disrupt the later Ninth Circuit decisions, it in no way endorses a bright line automatic rule that you get a file in 1983 action that says exceptional and extraordinary circumstances. And it reconfirms that the district court in that case, in the first instance, would have to consider whether the lawsuit should go forward on other non-anti-injunction act principles. I think I'm over my time here. So unless anyone has questions, I will stop there. You're two minutes over your time, but I gave Mr. Markey an extra three minutes. So if you need another minute to proceed. I think that covers most of what I was trying to say. I'm happy to answer any open questions that the court has. Okay. Any questions from the panel? During non-intervention, we thank Mr. Markey. We'll return to Mr. Hagee. The clock for Mr. Hagee should show three minutes for giving him his planned time. Thank you, Your Honor. Thank you, Judge Gould, for your courtesy. I think where I'd like to start is I think with the real problem that this court is going to need to confront. Kearney and Manistee do not stand, and it never stood for the proposition, that a state actor enjoys protected petitioning activity when it is seeking to enforce an unconstitutional law. Those cases simply do not extend. Yes, there were 1983 allegations in those cases. Wouldn't the unconstitutional law exception... Maybe this goes back to the question that was originally asked. Why is that any different than the sham exception? I mean, if it's so unconstitutional that it makes it sham litigation, why wouldn't that just fall within the sham exception? Because the way the Supreme Court and the way this court and SOSA, which is where Kearney and Manistee are getting their heft, will say it has to be protected petitioning activity, and it is a continuum. It is not a... But it would be. If we held that it was so unconstitutional that it was sham litigation, then it would be protected. In many cases, it would, Your Honor. But the problem is the court just blew through that second prong analysis. The other point I would make is the lower courts here, twice now, have declared Prop 65 with respect to these warnings, not just in Cal Chambers and the Kate Kapaney case you're going to hear shortly, but also in the Glyphosate case, where the same district court, not the same district court judge, but the same district court declared that application to Glyphosate, Prop 65, also unconstitutional under the First Amendment. We're not just dealing with a case of, you know, first impression or this is some weird issue. This is a structural problem with these private attorney general laws of this nature. I think that the other point that I'd like to make is that in any case, Noor Pennington can never immunize a state actor from a declaratory relief action. And that is canon. Yes, we have seen... Did you raise that argument below? The Noor Pennington briefing, Your Honor, was very, very limited below. But on this issue, did you raise that claim below? We did not, Your Honor. But I believe that the Amici has, and in fact, the defendants, the appellees do not even address the canon, which goes from a number of Ninth Circuit and district court cases in this circuit, which repeatedly have had... It doesn't make sense. It's not petitioning activity at all, if you're talking about enjoining or bringing a lawsuit for declaratory relief on the same issue. And there are case after case that has held that. I would just ask that this court, I appreciate your time. The structural problem with allowing state actors to impinge constitutional right is something that should not have to withstand sham litigation. We think we can meet that. We think we have. We'd be happy to amend. But we should not be allowing state actors to infringe all kinds of rights without the redress of federal courts, which is precisely the situation that Justice very broadly enmissioned, which again enjoined a prosecution at a state level, a state lawsuit impinging First Amendment rights. I appreciate the court's courtesy. Thank you, Mr. Hagee. This is an extremely difficult and challenging case. I'm going to thank the advocates for their presentations. I will also comment that when I went to law school, which was apparently before most or all of the people on this call were board, all we had to know was we had to know what Noor said. We had to know what Pennington said. But obviously, the doctrine has moved a few miles from that sense. So this case shall now be submitted with the panel's thanks.
judges: GOULD, BENNETT, NELSON